# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

REGINA S. LOWERY, )
)
      Plaintiff, )
)
v. ) Case No. CIV-12-299-RAW-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
      Defendant. )

## REPORT AND RECOMMENDATION

The claimant Regina S. Lowery requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 9, 1963, and was forty-seven years old at the time of the administrative hearing. (Tr. 27, 124). She completed her GED, attended three years of college, earned her LPN license, and has worked as an LPN. (Tr. 18, 147). The claimant alleges that she has been unable to work since August 1, 2007 due to Attention Deficit Hyperactivity Disorder (ADHD), post-traumatic stress disorder (PTSD), anxiety, and depression. (Tr. 143).

## Procedural History

On August 26, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on October 27, 2009, she applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 26, 2011. (Tr. 10-19). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of

work at all exertional levels, but with the following nonexertional limitations: she could understand, remember, and carry out both simple, routine, unskilled tasks and also detailed, semi-skilled tasks, but not complex, skilled tasks. (Tr. 14). The ALJ observed that such a finding was generally sufficient to find a claimant not disabled because it represents substantial work capability. (Tr. 14). The ALJ concluded that although the claimant was unable to perform her past relevant work, she was nevertheless not disabled because there was other work she could perform in the national and regional economies, *i. e.*, packaging (hand packager), kitchen helper, and housekeeping cleaner. (Tr. 19).

**Review**

The claimant contends that the ALJ erred because: (i) new evidence was obtained following the ALJ's determination; (ii) the ALJ improperly assessed her RFC, and (iii) the ALJ failed to fully develop the record. The undersigned Magistrate Judge finds that the ALJ *did not* properly evaluate the new evidence, and the decision of the Commissioner should therefore be reversed.

The record reveals that the claimant's severe impairments included major depressive disorder, anxiety disorder, and ADHD. (Tr. 12). The claimant saw Dr. Donald Chambers for an initial consultation on July 16, 2008. She reported doing well on her medication, which helped her to focus and function, and reported that she was a stay-at-home mom and liked it that way, but reported that her children were difficult to handle and that her home was "total chaos." (Tr. 234). She also reported racing thoughts. Dr. Chambers suggested a change in medication, but the claimant was reluctant. (Tr. 234). Dr. Steven DeLia provided the claimant with psychiatric treatment beginning in January

2009. (Tr. 243-247). He diagnosed her with major depressive disorder, recurrent, severe; ADHD; generalized anxiety disorder; and PTSD. His treatment notes largely relate to medication management. (Tr. 243-242).

In December 2009, a state reviewing physician found that the claimant had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 248-249, 262). On July 28, 2011, Dr. Delia, with the help of his nurse practitioner, completed a Medical Source Statement (MSS) regarding the claimant's ability to do work. Out of twenty categories, he noted that she was "markedly limited" in sixteen of them, and "moderately limited" in the remaining four. (Tr. 329-330). He stated in his functional capacity assessment that:

> Patient is mentally disabled and unable to function with employment on a consistent basis. Pt has great difficulty understanding and following simple instructions – let alone – precise or detailed – pt becomes confused and anxious very easily – pt has great difficulty adapting to any situation or chgs in environment. Pt does not tol[erate] situations well [with] other people present – becomes irritable, confused & is ↑ risk for anxiety attacks – pt req supervision [with] cooking, cleaning but able to perf personal care on herself & can assist her child [with] simple personal care. [She says,] "my child helps me remember to turn stove off [while] cooking." Pt feels very discriminated against & unable to socialize so has no friends. Unable to maintain employment d/t above & is significant candidate for disability. Patient is <u>not</u> capable of being employed & keeping a job.

(Tr. 331).

The claimant testified at the administrative hearing that she gets headaches two to three times a week, that she takes medicine for pain in her back, hands, and shoulders, and that she takes ibuprofen to manage the pain. (Tr. 31-34). She stated that her energy

will fluctuate, that she does her own grocery shopping but does not socialize, and that she cannot sit for very long because she gets bored. (Tr. 35-36). As to her mental problems, she testified that she was receiving treatment but that a recent adjustment to her medication was not working. (Tr. 37). She stated that she has hallucinations of her mother and herself talking in her head, that she struggles with concentration and memory to the point that completing her disability application was difficult, and that she can take care of her housework but it can take her the whole day because she takes a number of breaks. (Tr. 38-39). She testified that she fears opening mail and answering the door, as well as when her youngest son goes to school. (Tr. 39-40). Additionally, the claimant's mother completed several Third Party Function Reports, stating that she would check on her daughter two to three times a week to make sure she was okay. She described her daughter's daily activities as spending a lot of time alone, including walking up and down the road and talking to herself. (Tr. 157). Her mother described her as able to take care of her personal hygiene, but that she could not afford many necessities, and that she had very bad nerves to the point that she feared opening mail. (Tr. 160-164). Her mother further stated that she had to help her daughter remember to take her medication, and that her daughter needed help in the kitchen remembering to turn the stove off. (Tr. 196).

      Medical opinions from a treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to

controlling weight, the ALJ must determine the proper weight to which they are entitled by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *See Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-01 [quotations marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight," *id.* at 1300 [quotation omitted].

The ALJ summarized the claimant's hearing testimony as well as the medical evidence he had at the time, which included a Third Party Statement completed by her mother. He then found the claimant not credible, and further found that her allegations were not supported by the medical evidence. (Tr. 15, 17). In support of his findings,

the ALJ gave great weight to the opinion of the state reviewing physician and noted that the claimant sought mental health treatment only "relatively infrequently," she had received conservative treatment and responded well to medication, and no doctors had stated she was unable to work. (Tr. 16-17). As to Dr. DeLia's treatment notes, the ALJ observed that Dr. DeLia reported the claimant as stable and doing well on her medications. (Tr. 15). The ALJ did not have the benefit of Dr. DeLia's MSS at the time his opinion was issued.

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is bolstered by evidence submitted to the Appeals Council after the hearing, which included Dr. DeLia's MSS. The Appeals Council was required to consider this evidence if it is: (i) new; (ii) material; and, (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995).

First, the 2011 evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). Dr. DeLia's opinion from the Medical Source Statement was never presented to the ALJ prior to his decision and was thus neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). In finding the claimant not disabled, the ALJ relied, at

least in part, on the lack of records demonstrating that the claimant had functional limitations. But Dr. Delia's Medical Source Statement indicate that the claimant's conditions, in combination, could affect her ability to perform work on a full-time basis. This evidence suggests the claimant has impairments discounted in her RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The claimant's date last insured (March 31, 2012) had not expired as of the date of the ALJ's opinion, and is therefore chronologically relevant to the ALJ's decision. The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The ALJ had no opportunity to perform this analysis, and while the Appeals Council considered the new evidence, they failed to analyze it in accordance with the aforementioned standards. In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence.

As he was the claimant's treating physician, the opinions expressed by Dr. DeLia about the claimant's functional limitations were entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic

techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If for any reason such opinions were not entitled to controlling weight, the ALJ was required to analyze the proper weight to give them by applying "all of the factors provided in [§] 404.1527." *Id.*, *quoting Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4. *See also Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). The Government argues that Dr. DeLia's Medical Source Statement is not an acceptable medical source because it was signed by both the nurse practitioner and Dr. DeLia, but this is a post-hoc rationalization that the undersigned Magistrate Judge declines to adopt. *See Haga v. Astrue,* 482 F.3d 1205, 1207-1208 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. Therefore, no proper analysis of Dr. DeLia's opinion has been performed.

Because the ALJ had no opportunity to perform a proper analysis of the newly-submitted evidence in accordance with the authorities cited above, the Commissioner's decision should therefore be reversed and the case remanded for further proceedings. On

remand, the ALJ should re-assess the claimant's RFC in light of the new evidence, and then re-determine the work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 5th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma